**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
CAROL FISHER, individually and on behalf
of a class of persons similarly situated,

               Plaintiff,

       v.

JOHN A. KANAS, JOHN BOHLSEN, and
DANIEL T. HEALY,

               Defendants.
-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
07-CV-0302 (ADS)(ETB)

**A P P E A R A N C E S:**

**HARWOOD FEFFER LLP**
Attorneys for the Plaintiff
488 Madison Avenue, Suite 801
8th Floor
New York, NY 10022
      By:    Joel C. Feffer, Esq.,
             Daniella Quitt, Esq., Of Counsel

**WACHTELL, LIPTON, ROSEN & KATZ**
Attorneys for the Defendants
51 West 52nd Street
New York, NY 10019
      By:    William Savitt, Esq.,
             Adam Gogolak, Esq., Of Counsel

**SPATT, District Judge.**

        On December 12, 2006, Carol Fisher, individually and on behalf of a class of

persons similarly situated (the "Plaintiff" or "Fisher"), commenced an action in New

York Supreme Court Nassau County, against John A. Kanas ("Kanas"), John Bohlsen

("Bohlsen") and Daniel T. Healy ("Healy") (collectively the "Defendants").  On

January 22, 2007, the Defendants removed the action to this Court pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

Presently before the Court is the Plaintiff's motion to remand this action to state court, pursuant to 15 U.S.C. § 78bb(f)(3)(D) and 15 U.S.C. § 1147(c).

## I.  BACKGROUND

**A.    FACTUAL BACKGROUND**

On December 12, 2006, the Plaintiff, a former stockholder of North Fork Bancorporation, Inc. ("North Fork"), filed a complaint in state court against the following North Fork executives: (1) Kanas, North Fork's President, Chief Executive Officer and Chairman of the Board of Directors; (2) Bohlsen, North Fork's Vice Chairman of the Board of Directors; and (3) Healy, North Fork's Executive Vice President and Chief Financial Officer.   The Plaintiff contends that North Fork was incorporated in Delaware, and as a result, Delaware state law applies to the present case.  The Plaintiff alleges that North Fork disseminated misleading proxy statements, misrepresenting executive compensation policies to stockholders.  The Plaintiff contends that the executive compensation pay-out received by the Defendants was a violation of their fiduciary duties in violation of Delaware state law.

According to the Plaintiff, the class is composed of all former non-management North Fork stockholders who received 2004 and 2005 proxy statements, owned stock on December 1, 2006 and "were deprived of their full equity interest in

North Fork as a result of the egregious sum of money paid to defendants." According to the complaint, an issue common to all class members is whether the Defendants breached their fiduciary duties by seeking to have North Fork's shareholders elect directors without disclosing information regarding executive compensation. Specifically, the Plaintiff claims that, prior to every election of directors, stockholders received a proxy statement containing an executive compensation disclosure. The proxy statements "painted a picture of a company with reasonable executive compensation standards," and informed shareholders that the compensation agreements were standard.

However, the Plaintiff contends that the statements made in the proxies regarding executive compensation were materially false and misleading because the Defendants failed to disclose the magnitude of the payments that they would receive under their change in control arrangements after Capital One's acquisition of North Fork. The Plaintiff further claims that the executive compensation agreements were unusual in that the Defendants' taxes were completely paid by the company.

The Plaintiff contends that if stockholders had been aware of the Defendants' executive compensation agreements, they would not have elected management's candidates as directors, and, as a result, the Defendants' compensation agreements would not have been renewed. The Plaintiff argues that she, as well as class members, have been damaged because, as a result of the Defendants' executive compensation

agreements, stockholders did not receive the fair value of their interests in North Fork. The Plaintiff contends that the stockholders would have received "proportionately greater compensation for their North Fork shares from Capital One" if the Defendants had not received such excessive compensation. Specifically, the Plaintiff claims that shareholders "were deprived of their full equity interest in [N]orth [F]ork as a result of the egregious sum of money paid to the defendants."

**B.     PROCEDURAL HISTORY**

**1.     The Prior Federal Action**

In March 2006, the Plaintiff filed an action in this Court, against the present Defendants, as well as, North Fork, alleging that the Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act ("Exchange Act") and breached their fiduciary duties. In the amended complaint, the Plaintiff alleged that after North Fork announced that Capital One would acquire North Fork, stockholders discovered that upon the acquisition, various change-in-control agreements between North Fork and its executives would result in a payment of $288 million to executives, including a "tax gross-up," whereby North Fork would pay the individual Defendants' personal income taxes.

In that action, the Plaintiff claimed that, prior to the acquisition announcement, stockholders were not aware of the executive compensation arrangements. In particular, the Plaintiff claimed that from 2003 through 2005, when North Fork's

stockholders elected the Board of Directors, executive compensation was misrepresented by the Defendants because the proxy statements provided to stockholders contained "materially false and misleading" statements. The Plaintiff further alleged that the "defendants omitted to disclose accurately the potential magnitude of the payments under the change-in-control agreements with its executive officers." The Plaintiff also alleged that "North Fork's proxy statements painted a picture of a company with reasonable executive compensation standards." The Plaintiff sought to enjoin the payment of the executive compensation.

In December 2006, this Court granted the Defendants' motion to dismiss the amended complaint. The Court determined that the Plaintiff's allegations were insufficient to state a claim pursuant to Sections 14(a) and 20(a) of the Exchange Act. The Court further determined that essentially, the Plaintiff claimed that the Defendants breached their fiduciary duties to the corporation and that section 14(a) did not provide a cause of action to remedy a simple breach of fiduciary duty. The Court further found that it did not have jurisdiction over the Plaintiff's breach of fiduciary duty claim.

### 2. The Present Action

On January 22, 2007, the Defendants removed the present case to this Court. In support of removal, the Defendants contend that, pursuant to the SLUSA, the present case, as a covered class action, may not be maintained in state court because it

alleges a misrepresentation in connection with the purchase or sale of a covered security.

On February 16, 2007, the Plaintiff filed a motion to remand the case to state court. The Plaintiff contends that, following this Court's dismissal of her original case, she filed the present action in state court setting forth the same "garden variety" breach of fiduciary duty claim as set forth in her original action. The Plaintiff claims that this Court previously held it did not have jurisdiction over the Plaintiff's breach of fiduciary claim, and therefore, should remand this action because it sets forth the same allegations.

The Plaintiff further claims that the Defendants' misrepresentations, although not actionable under federal law, are a violation of Delaware law. Although the Plaintiff admits that, pursuant to the SLUSA, the present case is a covered class action and involves a covered security, the Plaintiff claims that "none of the alleged misrepresentations was in connection with the purchase or sale" of a covered security. The Plaintiff contends that the false and misleading statements prevented the Plaintiff from voting in an informed manner in connection with the election.

In opposition to the Plaintiff's motion, the Defendants contend that, although the Plaintiff's present complaint alleges the same misrepresentations by the Defendants as her prior complaint, the Plaintiff has altered her claims in two ways. The Defendants contend that in the previous action, Fisher was the sole Plaintiff and

sought to enjoin the payment of executive compensation. However, in the present action, the Plaintiff sets forth claims on behalf of a class of plaintiffs and claims that the class members were deprived of their full equity interests in North Fork as a result of the executive compensation agreements and would have received greater compensation for their North Fork shares if the Defendants had not been compensated. According to the Defendants, the Plaintiff's allegation that the misrepresentations resulted in the stockholders receiving less cash and stock for their North Fork shares, brings this action within the scope of the SLUSA. The Defendants argue that, pursuant to the SLUSA, the action is removable to this Court and subject to dismissal.

The Defendants also note that there is an exception to preemption under the SLUSA. According to the Defendants, although the "Delaware carve-out" offers exceptions to the SLUSA, the Plaintiff waived any such argument by her failure to make the argument in her opening brief. The Defendants further contend that the Delaware carve-out does not apply to this case because the action does not involve a communication with respect to the sale of securities and, additionally, because it only applies to actions brought within the state of incorporation.

In reply, the Plaintiff admits that she did not raise the Delaware carve-out in her brief. The Plaintiff further contends that the SLUSA is not applicable to this matter because the action does not involve the purchase and sale of securities. In

addition, the Plaintiff claims that even if the SLUSA does apply, the Delaware carve-out also applies.

## II. DISCUSSION

### A. As To Removal

Section 1441(a) of title 28 of the United States Code states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441; see also Lincoln Property Co. v. Roche, 546 U.S. 81, 126 S. Ct. 606, 610, 163 L. Ed. 2d 415 (2005) (explaining that section 1441 "authorizes the removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in a federal district court").

"Generally, the presence or absence of federal-question jurisdiction is governed by the well- pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." NYU Hosp. Ctr.-Tisch v. Local 348 Health & Welfare Fund, No. 04-6937, 2005 U.S. Dist. LEXIS 256, at *2-3 (S.D.N.Y. Jan. 6, 2005) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)) (internal quotations omitted). As such, "a defense that [a] plaintiff's claims

are preempted by federal law [usually will not suffice for the purpose of conferring] federal question jurisdiction, which must be determined by reference to the allegations that appear on the face of a well-pleaded complaint." <u>Marcella v. Capital Dist. Physicians' Health Plan</u>, 293 F.3d 42, 45 (2d Cir. 2002) (quoting <u>Plumbing Indus. Bd. v. E.W. Howell Co.</u>, 126 F.3d 61, 66 (2d Cir. 1997) (internal citations omitted).

However, those prohibitions do not prevent a federal court from looking beyond a plaintiff's complaint to determine whether there is federal question jurisdiction in certain limited circumstances. <u>Greenfield v. National Westminster Bank USA</u>, 846 F. Supp. 302, 305 (S.D.N.Y. 1994) (citations omitted); <u>see also</u> <u>Bowlus v. Alexander & Alexander Servs., Inc.</u>, 659 F. Supp. 914, 918 (S.D.N.Y. 1987) ("In [limited] circumstances, a federal court may look behind the complaint to preclude a plaintiff from defeating federal question jurisdiction through artful pleading, that is, by disguising a federal claim as a claim arising under state law"). Under the artful pleading doctrine, a federal court considering a removal petition can look beyond a plaintiff's complaint when (1) "preemption has eliminated the legal foundation of [a] plaintiff's state law cause[] of action" or (2) the "plaintiff chooses a state forum in order to evade the consequences of prior federal litigation." <u>Greenfield</u>, 846 F. Supp. at 305 (citations omitted); <u>see also</u> <u>Contreras v. Host Am. Corp.</u>, 453 F. Supp. 2d 416, 418 (D. Conn. 2006) ("The cases in which federal courts have permitted removal on the basis of the artful pleading doctrine fall into two general categories:

(1) cases in which federal preemption has eliminated the legal foundation of plaintiff's state law claims (complete preemption), and (2) cases in which plaintiff's choice of a state forum is motivated by the desire to evade the consequences of [federal] litigation").

### B.    Preemption Pursuant To The SLUSA

Pursuant to the SLUSA

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>  (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

Ring v. AXA Fin., Inc., No. 05-0616, 2007 U.S. App. LEXIS 8606, at *6-7 (2d Cir. Apr. 6, 2007) (citing 15 U.S.C. § 78bb(f)(1)).  "A covered class action is a lawsuit in which damages are sought on behalf of more than [fifty] people."  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 126 S. Ct. 1503, 1512, 164 L. Ed. 2d 179 (2006).  "A covered security is one traded nationally and listed on a regulated national exchange."  Id.  "However, the Act does not does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action  that may exist."  Contreras, 453 F. Supp. 2d at 419 (citing Dabit, 126 S. Ct. at 1512).  "Accordingly, plaintiffs may file suits in groups of under

50 individuals alleging state common law violations and 'the existence of [such] a calculated strategy to avoid SLUSA preemption [will] not, by itself, permit a finding [of] preemption.'" Id. (citing Bell v. Ebbers (In re Worldcom, Inc. Sec. Litig.), 308 F. Supp. 2d 236, 245 (S.D.N.Y. 2004)).

"If a state class action satisfies all the SLUSA criteria, the defendant may remove it to federal district court and the district court must dismiss." Ring, 2007 U.S. App. LEXIS at *7 (citing 15 U.S.C. § 78bb(f)(2)). "However, a lawsuit that does not satisfy all the SLUSA criteria must be remanded to state court." Id. (citing 15 U.S.C. § 78bb(f)(3)(D)). Thus, "federal court [is] the exclusive venue for [a] class action[] alleging fraud in the sale of [a] covered [security]". Lander v. Hartford Life & Annuity Life Ins. Co., 251 F.3d 101, 107-08 (2d Cir. 2001) (explaining that the SLUSA was enacted to prevent plaintiffs from filing class action lawsuits in State courts under more lenient State statutes). The basis for federal preemption in this context is the well-recognized "presumption that Congress envisioned a broad construction" for the SLUSA. Dabit, 126 S. Ct. at 1513-14.

In sum, "four conditions must be satisfied to trigger SLUSA's removal and preemption provisions: (1) the underling suit must be a 'covered class action'; (2) the action must be based on state or local law; (3) the action must concern a 'covered security'; and (4) the defendant must have misrepresented or omitted a material fact or employed a manipulative device or contrivance 'in connection with the purchase or

sale' of that security." Gordon Partners v. Blumenthal, No. 02 Civ. 7377, 2007 U.S. Dist. LEXIS 9110, at *52 (S.D.N.Y. Feb. 9, 2007) (citing Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp. 2d 684, 690-91 (S.D.N.Y. 2006)).  In the present case, the Plaintiff admits that the suit is a covered class action; is based on state law; and involves a covered security.  However, the Plaintiff contends that this matter should be remanded to state court because the case does not involve the purchase or sale of a covered security.

In 2006, the United States Supreme Court decided Merrill Lynch v. Dabit, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006).  "In Dabit, the Supreme Court held that the SLUSA's operative language must be read broadly to sweep in not only purchasers and sellers of securities but also holders of securities."  In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 604 (S.D.N.Y. 2006) (citing 126 S. Ct. at 1513).  The Supreme Court determined that the SEC and Congress "envisioned a broad construction" of the SLUSA.  Dabit, 126 S. Ct. at 1513-14. Moreover, the Supreme Court determined that just holding a security, rather than purchasing or selling, was sufficient to bring a case within the realm of the SLUSA. Id.

In Leykin v. AT&T Corp., in a summary order to which this Court may now cite, the Second Circuit addressed issues similar to those in the present case.  In Leykin, the plaintiff class alleged that the defendants breached their fiduciary duties

and committed fraud by engaging in a secret scheme to convert proprietary technology and making misleading claims in proxy statements. Leykin v. AT&T Corp., No. 06-1583, 2007 U.S. App. LEXIS 2378 (2d Cir. Jan. 30, 2007). The plaintiffs contended that the defendants' misrepresentations and scheme resulted in a decline in stock prices. Id. The Second Circuit determined that the "plaintiffs' claims for common law fraud and breach of fiduciary duty of candor toward the shareholders [we]re preempted by the Securities Litigation Uniform Standards Act," because the alleged misrepresentations and omissions in the proxy statements were "in connection with the purchase or sale of a covered security." Id. (citing 15 U.S.C. § 78bb(f)(1)).

In Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp. 2d 684, 691 (S.D.N.Y. 2006), the plaintiffs argued that the SLUSA did not apply and "asserted that they neither purchased nor sold securities as a result of the Technology Research Team's allegedly faulty reports and recommendations, but only that they purchased securities prior to Defendant's issuance of its reports and recommendations, and that they held those securities, rather than selling them on the market, as a result of the reports and recommendations." However, the Court, noting the Supreme Court's decision in Dabit, determined that the plaintiffs' claims were "within the purview of SLUSA, and must therefore be dismissed." Felton, 429 F. Supp. 2d at 695.

The Court finds that in the present case, the SLUSA bars the Plaintiff's claims. The Plaintiff clearly alleges, in her complaint, that the class members "were deprived

of their full equity interest in North Fork as a result of the egregious sums of money paid to defendants."  The Plaintiff's own complaint establishes a connection between the alleged misrepresentations made in the proxy statements, the executive compensation paid and the price of the stock.  Although the proxy statements did not make a misrepresentation regarding the purchase or sale of a security, the statute has been interpreted broadly by the Supreme Court in <u>Dabit</u> to include any misrepresentation touching upon the purchase or sale of securities.  Moreover, in <u>Leykin</u>, the Second Circuit, construing the statute broadly, determined that if a misrepresentation is made in violation of a fiduciary duty, and results in the decline in stock prices, the case falls within the realm of the SLUSA.

In addition, although the Plaintiff contends that her claims are identical to the claims set forth in her prior case, that argument is without merit.  In the prior action, the Plaintiff did not allege claims on behalf of a class.  Further, in the prior action the Plaintiff did not allege that the misrepresentations had any affect on stock prices.  In that action, the Plaintiff merely sought to enjoin the payout of executive compensation.  The changes in the Plaintiff's allegations bring this case within the broad realm of the SLUSA.  The Supreme Court determined that the "SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class action device to vindicate certain claims. The Act does not deny any

individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." <u>Dabit</u>, 126 S. Ct. at 1513-14.

The Plaintiff's decision to set forth claims on behalf of a class and seek relief regarding stock prices bring this case within the realm of the SLUSA.

**C.     As To The Delaware Carve-Out**

"[A] 'carve-out' provision . . . bars removal of any action that, although it satisfies the SLUSA requirements, is 'based upon the statutory or common law of the State in which the issuer is incorporated.'" <u>Phillips v. Reckson Assocs. Realty Corp.</u>, No 06-CV-5971, 2006 U.S. Dist. LEXIS 83288, at *7 (E.D.N.Y. Nov. 15, 2006).

**1.     As To The Plaintiff's Failure To Raise This Claim**

In the Defendants' notice of removal, the Defendants note that "[t]his action is being removed pursuant to the Securities Litigation Uniform Standards Act of 1998." However, in the Plaintiff's motion to remand this action to state court, the Plaintiff fails to argue that, pursuant to the Delaware carve-out, the case should be remanded. In fact, although the Delaware carve-out is the only basis for remand if the Court finds that the SLUSA applies, the Plaintiff fails to address this issue in her brief. Instead, the Defendants raise and address the issue in their opposition to the Plaintiff's motion to remand. Thereafter, the Plaintiff briefly addresses the issue in her reply.

As such, the Plaintiff has waived this argument. <u>ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.</u>, No. 05-1917, 2007 U.S. App. LEXIS 9235, at *29 n.12

(2d Cir. Apr. 23, 2007) ("We decline to consider an argument raised for the first time in a reply brief"); <u>Clubside, Inc. v. Valentin</u>, 468 F.3d 144, 160 (2d Cir. 2006) ("we generally do not consider arguments that are raised for the first time in a reply brief"); <u>Patterson v. Balsamico</u>, 440 F.3d 104, 114 (2d Cir. 2006) ("He did not, however, raise this issue in his initial brief. This Court generally will not consider arguments raised for the first time in a reply brief"); <u>Duryea v. County of Livingston</u>, No. 06-CV-6436T, 2007 U.S. Dist. LEXIS 30908, at *20 (W.D.N.Y. Apr. 26, 2007) ("the fact that defendants raised a new issue in their reply brief is improper practice").

Despite the Plaintiff's waiver, this Court will address the parties' claims regarding the Delaware carve-out.

### 2. As To Actions Brought Outside The State of Incorporation

The Defendants argue that the Delaware carve-out does not apply to actions brought outside the state of incorporation, and that the Plaintiff would only have the opportunity to remand this case if it had been initially filed in the Delaware state court. The Defendants cite various examples of the legislative history of the SLUSA in support of their contention. Specifically, they refer to the Senate Banking Committee Report and the House Conference Committee Report, both of which appear to demonstrate the intention of the legislature that the carve-out exception would only apply when suits are brought in the state of incorporation. <u>See</u> S. Rep.

105-182, 1998 WL 226714, at *6 (1998); H.R. Conf. Rep. 105-803, 1998 WL 703964, at *13-14 (1998).

The Plaintiff cites no new case law, and only references cases cited by the Defendants, in support of her contention that the Delaware carve-out applies, despite the fact that the case was filed outside the state of incorporation. However, there are cases within this Circuit that discuss the use of the carve-out, regardless of the fact that the case was filed outside the state of incorporation.

In <u>Phillips</u>, 2006 U.S. Dist. LEXIS 83288, an Eastern District of New York case, the plaintiffs sought "to remand th[e] action on the basis of a carve-out provision that bars removal of any action that, although it satisfies the SLUSA requirements, is based upon the statutory or common law of the State in which the issuer is incorporated." In <u>Phillips</u>, the plaintiffs contended that their action was based upon the laws of Maryland, the issuer's state of incorporation. The Court determined that "the state court may determine plaintiffs' claims to be based upon the statutory or common law of Maryland, the state in which the issuer is incorporated, and, accordingly, satisfy the carve-out provision in SLUSA." <u>Phillips</u>, 2006 U.S. Dist. LEXIS at *12 . The Court remanded the action to the New York state court finding that "this case cannot be removed under SLUSA until it is clear that the carve-out provision does not apply." <u>Id</u>.

In another case in this Circuit, the Court determined that the Delaware carve-out applied to an action removed from New York state court because the action was based on Massachusetts state law and the issuer was incorporated in Massachusetts. Lewis v. Termeer, 445 F. Supp. 2d 366, 373 (S.D.N.Y. 2006) ("Plaintiffs assert Massachusetts state law claims and Genzyme is incorporated is Massachusetts . . . the claims of all seller-plaintiffs are preserved from the SLUSA prohibition").

As such, the Court declines to definitively find that the Delaware carve-out does not apply outside the state of incorporation.

**3.     As To The Application Of The Carve-Out**

Specifically, the SLUSA provides:

> (3) Preservation of certain actions.
>    (A) Actions under State law of State of incorporation.
>       (i) Actions preserved. Notwithstanding paragraph (1) or (2), a covered class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained in a State or Federal court by a private party.
>       (ii) Permissible actions. A covered class action is described in this clause if it involves--
>          (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
>          (II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that--
>             (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

(bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 USCS § 78bb.  In sum, a case is not subject to removal pursuant to the SLUSA if (1) the issuer of the stock purchases or sells securities from or to shareholders of the issuer's stock; or (2) if a communication or recommendation is made by the issuer to shareholders with respect to the sale of securities and concerns decisions regarding voting securities, exercising appraisal rights or acting in response to an exchange.  Id.

Although the present action is based upon the law of Delaware, North Fork's state of incorporation, the first Delaware carve-out exception is not applicable because the Plaintiff does not allege that the issuer, North Fork, purchased or sold its own shares of stock.  Lewis, 445 F. Supp. 2d at 372 (the Court determined that the Delaware carve-out applied because the plaintiffs "tendered their stock to the issuer in the Exchange transaction").  Rather, in the present case, the Plaintiff contends that the stockholders would have received "proportionately greater compensation for their North Fork shares from Capital One" if the Defendants had not received excessive compensation.

In addition, the second exception is also inapplicable to this case.  The second exception applies to claims based on a recommendation or communication regarding the sale of securities.  In re Metlife Demutualization Litig., No. 00-2258,  2006 U.S. Dist. LEXIS 60104, at *21 (E.D.N.Y.Aug. 7, 2006) ("Even assuming that the Fiala

action did not satisfy Section 78bb(f)(3)(A)(ii)(I), it would still fit into the Delaware Carve Out because the action involves a recommendation with respect to voting on the sale of securities for purposes of Section 78bb(f)(3)(A)(ii)(II)").  However, here, the Plaintiff admits in her memorandum of law, that although the proxy statements made misrepresentations regarding executive compensation, the proxies did not directly make any communication or representation regarding the sale of North Fork securities.

The Court's finding that the SLUSA applies because a misrepresentation was made "in connection" with the purchase or sale of a covered security may seem inconsistent with the determination that the Delaware carve-out does not apply because there was no recommendation or communication "regarding" the sale of securities.  However, the findings are consistent with the case law.  As previously stated, the Supreme Court broadly construes the "in connection" language in the SLUSA.  The SLUSA does not require that the defendants make a misrepresentation directly regarding the sale of stock.  It only requires some "connection" between a misrepresentation and stock.  The Delaware carve-out requires a communication "regarding" the sale of securities.  Although for SLUSA purposes, there is a sufficient "connection" between the misrepresentations in the proxy statements, the executive compensation and the decline in stock prices, it is undisputed that this case does not involve a communication directly discussing the sale of securities.

As such, despite the application of Delaware law to the present case, the Delaware carve-out is not applicable. Accordingly, removal was appropriate pursuant to the SLUSA and the complaint must now be dismissed. <u>See</u> 15 USCS § 78bb ("No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party . . ."); <u>Felton v. Morgan Stanley Dean Witter & Co.</u>, 429 F. Supp. 2d 684, 695 (S.D.N.Y. 2006) ("Plaintiffs' putative class action falls within the purview of SLUSA, and must therefore be dismissed. Accordingly, Plaintiffs' motion to remand the case to the state court is denied, and Defendant's motion to dismiss the Amended Complaint is granted"); <u>Atencio v. Smith Barney</u>, No. 04 Civ. 5653, 2005 U.S. Dist. LEXIS 1526 (S.D.N.Y. Feb. 2, 2005) (the Court determined that the SLUSA applied and denied the plaintiff's motion to remand and granted the defendant's motion to dismiss the complaint); <u>Cinicolo v. Morgan Stanley Dean Witter & Co.</u>, No. 01 Civ. 6940, 2004 U.S. Dist. LEXIS 24896, at *16-17 (S.D.N.Y. Dec. 9, 2004) ("This Court finds that the alleged misrepresentations in this case were in connection with the purchase or sale of a covered security. Therefore, the present action falls within the scope of SLUSA and SLUSA requires that this Court hereby dismiss it").

### III.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Plaintiff's motion to remand the case to state court is **DENIED**; and it is further

**ORDERED**, that the complaint is dismissed; and it is further

**ORDERED**, that the Clerk's Office is directed to close this case.


**SO ORDERED.**

Dated: Central Islip, New York
May 7, 2007

 _/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge